IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DONALD ALLEN CAMP, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-11-213-SPS |

## OPINION AND ORDER

The claimant Donald Allen Camp requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997).  Substantial evidence is "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).  The Court may not reweigh the evidence or substitute its discretion for the Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity.  Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities.  If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied.  If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work.  At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC.  Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born July 8, 1968, and was forty-one years old at the time of the administrative hearing. (Tr. 25). He completed the twelfth grade, and has worked as a farm laborer. (Tr. 14, 146). The claimant alleges that he has been unable to work since January 1, 2001 due to chronic leg and back pain and a psychological mental impairment. (Tr. 139).

## Procedural History

On January 16, 2009, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His application was denied. ALJ John W. Belcher conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 9, 2010. (Tr. 10-16). The Appeals Council then denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to lift/carry/push/pull twenty pounds occasionally and ten pounds frequently, stand/walk two hours in an eight-hour workday, and sit eight hours in an eight-hour workday. The ALJ imposed the additional limitations of only occasionally balancing, stooping, bending, kneeling, crouching, crawling, and climbing stairs/ropes/scaffolding. (Tr. 12). The ALJ concluded that

although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the regional and national economies, *e. g.*, sewing machine operator, assembly worker, and food order clerk. (Tr. 15).

## Review

The claimant contends that the ALJ erred: (i) by improperly evaluating the medical source opinions and (ii) by improperly evaluating his credibility. The Court finds the claimant's first contention persuasive for the following reasons.

The claimant had the severe impairment of chronic obstructive pulmonary disease (COPD). (Tr. 12). The relevant medical evidence reveals that on October 28, 2008, the claimant was hospitalized for a smoke inhalation injury and exacerbation of his COPD after being exposed to a brush fire. (Tr. 289, 298, 304). He was treated with steroids and antibiotics for probable pneumonia, and was discharged on November 3, 2008. (Tr. 296). Upon his release, the claimant was to avoid dust and smoke exposure, and he quit smoking. (Tr. 299, 419). At a November 17, 2008 follow-up appointment with his treating physician, Dr. Scott G. Stinnett, notes indicate the claimant had continued dyspnea and a cough productive of gray sputum. (Tr. 282). On November 20, 2008, Dr. Kevin Hardy examined the claimant and found that pulmonary function tests were compatible with severe restrictive lung disease, but that the study was difficult to interpret and he was not confident it was completely accurate. Dr. Hardy assessed the claimant with dyspnea after smoke inhalation injury, and noted that it was possible the claimant had developed bronchiolitis from smoke-related injuries. (Tr. 420). Dr. Hardy

saw the claimant again on December 15, 2008, noting that spirometry was compatible with moderate restrictive lung disease with a possible obstructive component, and that there had been an overall improvement in spirometry as compared to the November 20 study. (Tr. 417). Dr. Hardy also stated that he believed the claimant had bronchiolitis, but that the only way to confirm would be an open lung biopsy. (Tr. 417). The claimant reported that he was exposed to another brush fire on January 1, 2009, and went to the emergency room on January 3, 2009 with acute dyspnea, where he reported experiencing a burning pain. (Tr. 288-290). The claimant saw Dr. Hardy again on February 5, 2009, and Dr. Hardy again assessed the claimant with probable bronchiolitis. Dr. Hardy noted that the claimant's pulmonary function testing had "improved tremendously" since the November 2008 testing, but that the claimant continued to "complain bitterly of severe dyspnea." (Tr. 413). On April 3, 2009, the claimant reported to Dr. Hardy that he was doing worse, and his spirometry testing showed reduced mid flows. Dr. Hardy diagnosed him with bronchiolitis secondary to smoke exposure from a fire, and COPD. (Tr. 447). Dr. Hardy saw the claimant again on April 6, 2009, and stated that the claimant's pulmonary functions indicated severe obstructive lung disease and that he was considering a lung biopsy but that the claimant's insurance had run out. (Tr. 445).

   The claimant was evaluated at the Mayo Clinic for his possible bronchiolitis, and Dr. Hiroshi Sekiguichi of the May Clinic diagnosed the claimant with smoke inhalation injury; asthma; restrictive lung disease based on pulmonary function tests April 2009; dyspnea on exertion, multifactorial; chronic steroid therapy; history of smoking; and probable seborrheic dermatitis. (Tr. 476). Dr. Hardy interpreted those findings as

agreeing with his probable diagnosis of bronchiolitis. (Tr. 439). On August 6, 2009, Dr. Hardy's nurse practitioner noted that the claimant had asked to be seen due to increased dyspnea, reporting that he had not had his medications for over two weeks because he could not afford them and his pharmacy had cut him off because he owed $1,200. (Tr. 437). On September 9, Dr. Hardy noted that the claimant was taking a "terrible" combination of inhaled medications, that the claimant had reported he was unable to work because of his dyspnea and even a sedentary job would not work because he was too nervous and spent most of his days sleeping. Dr. Hardy adjusted the claimant's medications and provided him with samples. (Tr. 433). Pulmonary function tests revealed no significant improvement after bronchodilator therapy, and Dr. Hardy noted a decline from May 4, but that the results were similar to or somewhat improved from April 23. (Tr. 433). On April 18, 2010, Dr. Hardy completed a Medical Source Statement as to the claimant's physical impairments. He stated that he did not know the claimant's limitations as to sitting, standing, walking, or lifting, but noted that the claimant was totally restricted from exposure to marked changes in temperature and humidity, as well as exposure to dust, fumes, and gases. (Tr. 479-480). In support, Dr. Hardy referred to the claimant's pulmonary function tests showing severe restriction and obstruction, with a decrease in oxygen saturation with exertion. He further stated, "Pt is very [short of breath] and will not be able to perform manual labor. He will not be able to exert for prolonged periods. It looks as if this may be permanent." (Tr. 481).

      The claimant testified at the administrative hearing that he has problems with breathing, that he "run[s] out of air real easy," and that the things that exacerbate his

breathing problems include: walking, exertion in his arms, lifting, bending, stooping, outside air, perfumes, and household cleaning supplies. (Tr. 33). He stated that after he becomes short of air, he has to lay down for two to three hours, and that he does very little during a typical day except for reading. (Tr. 33-34). He stated that he believed his breathing problems were due at least in part to having scarred lungs. (Tr. 34-35).

      The ALJ summarized the claimant's testimony and the medical evidence. As to the medical evidence, the ALJ discussed Dr. Hardy's treatment notes, particularly that the claimant had "tremendous improvement" from November 2008 to February 2009, that the claimant had stated he would be too nervous to do even sedentary work, and further took note of Dr. Hardy's MSS; however, the ALJ made no mention of Dr. Hardy's restrictions from exposure to dust, fumes, etc. (Tr. 13-14). The ALJ acknowledged that the claimant's September 2009 spirometry readings met a listing, but disregarded them because the claimant had been non-compliant with his medications. (Tr. 14). The ALJ agreed that the claimant could probably not perform manual labor, but stated that did not rule out all work. He further found the claimant not credible, and stated that the claimant's work history indicated a lack of motivation to work. (Tr. 14). The ALJ then found support for his findings in the opinions of two state reviewing physicians who had evaluated the records in March and April 2009, and found that the claimant did not even have a severe impairment. (Tr. 14, 431-432). One state reviewing physician erroneously stated that Dr. Hardy opined in February 2009 that the claimant "suffers more from bronchitis" (Tr. 432), and the ALJ apparently believed the claimant "had only bronchitis." (Tr. 14).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the ALJ gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Dr. Hardy expressed such an opinion in his medical source statement, but the ALJ simply recited *some* of those findings without

-8-

any analysis other than to agree that the claimant could not perform manual labor. Additionally, the ALJ failed to even note Dr. Hardy's restrictions from exposure to marked changes in temperature and humidity, dust, fumes, and gases. *See, e. g., Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300.  In any event, even if the opinion expressed by Dr. Hardy *was not* entitled to controlling weight, the ALJ should have determined the proper weight to give his opinion by applying all of the factors in 20 C.F.R. § 404.1527.  *See Langley*, 373 F.3d at 1119. *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted].  *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review.  Ms. Oldham cites no law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion. . . . The ALJ provided good

-9-

reasons in his decision for the weight he gave to the treating sources' opinions. Nothing more was required in this case."). The ALJ failed to perform the proper analysis here.

Last, the Court notes that the claimant's inability to afford effective medication should not be held against him. *See, e. g.*, *Thomas v. Barnhart*, 147 Fed. Appx. 755, 760 (10th Cir. 2005) ("'[T]he medicine or treatment an indigent person cannot afford is no more a cure for his condition than if it had never been discovered . . . To a poor person, a medicine that he cannot afford to buy does not exist.'") [unpublished opinion], *quoting Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

Because the ALJ failed to properly analyze the weight due to Dr. Hardy's opinion, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such results in any adjustment to the claimant's mental RFC, the ALJ should re-determine what work, if any, he can perform and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 18th day of September, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma